TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER F. PORTER (Cal. Bar No. 258597)
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorneys
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0813/0756
     Facsimile: (213) 894-6269
     E-mail:    alexander.porter2@usdoj.gov
                valerie.makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-00288(A)-SVW |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION; MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| LUCINE ILANGEZYAN, | Hearing Date: April 12, 2021<br>Hearing Time: 1:30 p.m.<br>Location:    Courtroom of the Hon. Stephen V. Wilson |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Alexander F. Porter and Valerie L. Makarewicz, hereby files its Sentencing Position.

This Sentencing Position is based upon the attached memorandum of points and authorities, the Presentence Investigation Report, the files and records in this case, and such further evidence and argument as the Court may permit.

| | | |
|---|---|---|
| 1 | Dated: March 29, 2021 | Respectfully submitted, |
| 2 | | TRACY L. WILKISON<br>Acting United States Attorney |
| 3 | | |
| 4 | | BRANDON D. FOX<br>Assistant United States Attorney<br>Chief, Criminal Division |
| 5 | | |
| 6 | | _____/s/_____<br>ALEXANDER F. PORTER |
| 7 | | VALERIE L. MAKAREWICZ<br>Assistant United States Attorneys |
| 8 | | |
| 9 | | Attorneys for Plaintiff<br>UNITED STATES OF AMERICA |

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

On November 18, 2020, defendant Lucine Ilangezyan pleaded guilty to Count One of the First Superseding Indictment, which charged defendant with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. Defendant was the insurance biller for R&R Med Spa and Nu-Me Spa (collectively, the "Clinics"), and in that role, defendant submitted a massive volume of fraudulent claims for reimbursement to insurance companies for medical services that were not provided to patients. During the course of defendant's participation in the conspiracy, from January 2012 to April 2017, defendant and her co-conspirators submitted approximately $20 million in fraudulent claims to insurance companies and the insurance companies paid approximately $8 million on those claims.

The government agrees with the Guidelines calculation in the Presentence Investigation Report ("PSR"), which results in a total offense level for defendant of 21. In the plea agreement, the government agreed to recommend a 2-level variance pursuant to the sentencing factors under 18 U.S.C. § 3553(a), based on defendant's early acceptance of responsibility. Accordingly, after applying this 2-level variance, which results in a total offense level of 19, and based on the PSR's finding that defendant is in Criminal History Category I, defendant's Guidelines range should be 30-37 months. The government is recommending a sentence at the low end of the range, for a sentence of 30 months. In addition, the Court should order defendant to pay restitution to the insurance company victims in the total amount of $7,991,406, as set forth below.

## II. FACTUAL BACKGROUND

Defendant's offense conduct is set forth in the factual basis of the plea agreement. Plea Agreement ("PA") ¶ 11. Defendant was the insurance biller for the Clinics. Id. From January 2012 to April 2017, defendant conspired with her co-defendants to commit health care fraud by submitting claims to health insurance companies for services that were not provided to patients or were not medically necessary. Id.

Defendant knew that co-conspirator Roshanak Khadem and co-conspirator Marina Sarkisyan would inform patients that if they provided their health insurance information to the Clinics, the patients could receive free or discounted cosmetic procedures, including facials, laser hair removal, and Botox injections. Id. Defendant knew that co-conspirators Khadem and Sarkisyan would obtain health insurance information from the patients and provide that information to defendant. Id. Acting at the direction of co-conspirator Khadem, defendant would then submit and cause to be submitted false and fraudulent claims to the health insurance companies for medical procedures that defendant knew were either not actually provided to the patients or were not medically necessary. Id. Then, based on the amount that the health insurance companies paid on those false and fraudulent claims, co-conspirators Khadem and Sarkisyan would calculate an amount, which the co-conspirators referred to as a "credit," that the patients could use to receive free or discounted cosmetic procedures from the Clinics. Id. The patients would then come into the Clinics to receive the free or discounted cosmetic procedures, which were often provided by co-conspirator Roberto Mariano. Id.

During the course of defendant's participation in the conspiracy, from January 2012 to April 2017, defendant and her co-conspirators submitted and caused to be submitted $20,932,411 in false and fraudulent claims to the health insurance companies and the health insurance companies paid $7,991,406 on those false and fraudulent claims.  Id.

**III. GUIDELINES CALCULATION**

The government submits that the offense level for defendant under the Guidelines should be calculated as follows.  These calculations are consistent with the plea agreement and the PSR.

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2B1.1(a)(2) |
| Loss more than $9.5 million, less than $25 million (based on billed amount of $20,932,411): | +20 | U.S.S.G. § 2B1.1(b)(1)(K) |
| Minor Role: | -2 | U.S.S.G. § 3B1.2(b) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |
| Total Offense Level: | 21 | |

The parties do not have an agreement regarding defendant's criminal history category.  PA ¶ 15.  Probation has determined that defendant falls within criminal history category I.  PSR ¶ 53.

**A.   The Loss Enhancement Should Be Based On The Total Amount Billed**

The loss amount for defendant is based on the fraudulent billings that defendant admitted were submitted to the health insurance companies: $20,932,411 billed and based on those fraudulent billings the health insurance companies paid $7,991,406.  PA, at pg. 10:6-11.  Pursuant to United States v. Popov, 742 F.3d 911, 915 (9th Cir. 2014), the total amount of the fraudulent billings is the

3

presumptive amount of the loss, unless the defendant can rebut the presumption and establish that she only intended to defraud the insurance companies based on the amount that they actually paid. In defendant's case, defendant has not rebutted the presumption under Popov. As a result, the government agrees with the PSR that the total billed amount of $20,932,411 is the appropriate amount to be used in determining defendant's intended loss. PSR ¶ 38. This amount results in a loss enhancement of +20.

### B. A Two-Level Minor Role Departure Is Appropriate For Defendant

The parties have agreed to a 2-level minor role departure for defendant pursuant to U.S.S.G. § 3B1.2(b). Application Note 3(A) says: "[A] defendant who is accountable . . . for a loss amount under 2B1.1 . . . that greatly exceeds the defendant's personal gain from a fraud offense or who had limited knowledge of the scope of the scheme may receive an adjustment under this guideline." Here, defendant did not have limited knowledge of the scope of the scheme – she was the biller for the Clinics and so she knew the volume of fraudulent claims that the Clinics were submitting to the health insurance companies. However, the loss amount did greatly exceed defendant's personal gain from the fraud. Unlike defendant's other co-conspirators, defendant did not receive a percentage of the billings that were paid from the insurance companies. Defendant was paid a smaller amount than her co-conspirators, and therefore the parties have agreed that a 2-level minor role departure is appropriate for defendant.

**IV. RESTITUTION**

Restitution is mandatory in this case because defendant's conviction for conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, is an offense against property involving fraud or deceit. See 18 U.S.C. § 3663A(c)(1)(A)(ii). In the plea agreement, defendant agreed to pay restitution in the amount of $7,991,406. PA ¶ 7. Pursuant to the terms of the plea agreement, and consistent with the PSR, defendant should be ordered to pay restitution to health insurance companies in the total amount of $7,991,406, as follows:

| | |
|---|---|
| Anthem Blue Cross | $5,332,220 |
| International Longshore and Warehouse Union – Pacific Maritime Association Benefit Plan | $1,869,945 |
| Blue Shield of California | $520,087 |
| Federal Employees Health Benefit Plan | $185,611 |
| CIGNA Health Management | $83,543 |

**V.   UNDER THE SECTION 3553(a) FACTORS, DEFENDANT'S CONVICTION MERITS A SENTENCE OF 30 MONTHS' IMPRISONMENT**

Based on the Guideline factors discussed above, defendant's total offense level is 21. In the plea agreement, the government agreed to recommend a 2-level variance pursuant to the sentencing factors under 18 U.S.C. § 3553(a). PA ¶ 14. This variance is based on the fact that due to the COVID-19 pandemic, the justice system is facing an unprecedented crisis through a backlog of cases, and the 2-level variance recognizes that defendant's early acceptance of responsibility will lessen the burden on the court system because defendant has agreed to proceed with her guilty plea and sentencing

5

hearings by VTC and to waive all appellate rights. Id. Based on these circumstances, the government submits that a 2-level variance is appropriate for defendant. After application of this variance, defendant's total offense level should be 19, and the government is recommending a sentence at the low end of the Guideline range, for a sentence of 30 months in prison. The government submits that a 30-month sentence is appropriate for defendant.

### A.  Nature and Circumstances of the Offense

Defendant's crime was serious. Defendant participated in a health care fraud conspiracy that resulted in fraudulent billings to health insurance companies of more than $20 million, with the insurance companies paying approximately $8 million. Defendant was the insurance biller for the Clinics and she admitted in the factual basis of her plea agreement that she knew was submitting false and fraudulent claims to the health insurance companies for medical procedures that defendant knew were either not actually provided to the patients, or were not medically necessary. PA, at pg. 9:21-25. In addition, defendant operated this scheme for more than five years, from January 2012 to April 2017. Id. at pg. 8:25-28. The long-running nature of this scheme shows that defendant's crime was serious.

Fraud schemes like the one in this case that target health care insurance programs have the result of increasing the cost of health care services to everyone. By injecting fraud into the system, these schemes contribute to the extraordinarily high cost of health care in the United States. Thus, defendant's crime in this case is undoubtedly serious and are worthy of punishment.

Based on these facts, the government submits that a sentence of 30 months is appropriate for defendant.

### B.  History and Characteristics of Defendant

Although defendant does not have a criminal history that affects her criminal history calculation under the Guidelines, the PSR notes that defendant and her husband were arrested in 2006 after a traffic stop where the police officers found marijuana, Xanax pills, and heroin in a concealed cigarette box.  PSR ¶ 56.  The police officers also found in defendant's purse a box full of .223 caliber ammunition.  Id.

Defendant has four children, but the PSR indicates that defendant lives with her husband and her mother-in-law.  Id. ¶ 65.  Defendant's sister also lives in the Los Angeles area.  Id. ¶ 64.  Thus, there appear to be other caretakers who can care for defendant's children while defendant serves her custodial sentence in this case.

### C.  Deterrence, Promoting Respect for the Law, and Punishing Defendant for Her Crime

A sentence of 30 months is appropriate to deter defendant and others from engaging in similar illegal conduct.  Individuals who are engaged in fraud schemes like this one that target health insurance plans, often make a calculated decision that the risk of being caught, and being punished, is worth the illicit proceeds that they can obtain through the fraud scheme.  A sentence of 30 months will serve to affect that calculus and cause defendant and other individuals to decide that the money they can gain through such schemes is not worth the risk of incarceration.

Furthermore, a sentence of 30 months will promote respect for the law and will adequately punish defendant for her participation for more than five years in a scheme that resulted in fraudulent claims of more than $20 million being submitted to health insurance programs.

## VI. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court impose a sentence of: (1) 30 months' imprisonment; (2) a three-year period of supervised release; (3) restitution in the total amount of $7,991,406, as described above; and (4) a mandatory special assessment of $100.