TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER F. PORTER (Cal. Bar No. 258597)
VALERIE L. MAKAREWICZ (Cal. Bar No. 229637)
Assistant United States Attorneys
Major Frauds Section
       1100 United States Courthouse
       312 North Spring Street
       Los Angeles, California 90012
       Telephone: (213) 894-0813/0756
       Facsimile: (213) 894-6269
       E-mail:    alexander.porter2@usdoj.gov
                  valerie.makarewicz@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 18-00288(A)-SVW |
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM |
| v. | Hearing Date: April 12, 2021 |
| LUCINE ILANGEZYAN, | Hearing Time: 1:30 p.m. |
| Defendant. | Location:    Courtroom of the Hon. Stephen V. Wilson |

        Plaintiff United States of America, by and through its counsel

of record, the Acting United States Attorney for the Central District

of California and Assistant United States Attorneys Alexander F.

Porter and Valerie L. Makarewicz, hereby files this Response to

Defendant's Sentencing Memorandum.

1   Dated: April 7, 2021            Respectfully submitted,

2                             TRACY L. WILKISON
                            Acting United States Attorney

3

4                             BRANDON D. FOX
                            Assistant United States Attorney
                            Chief, Criminal Division

5

6                               /s/
                            ALEXANDER F. PORTER

7                             VALERIE L. MAKAREWICZ
                            Assistant United States Attorneys

8

9                             Attorneys for Plaintiff
                            UNITED STATES OF AMERICA

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

The government submits this memorandum to respond to certain issues raised in defendant's sentencing memorandum, which was filed on April 5, 2021.

## I.   DEFENDANT'S SENTENCING MEMORANDUM MINIMIZES DEFENDANT'S KNOWING AND WILLFUL PARTICIPATION IN THE CONSPIRACY

Defendant pleaded guilty in this case to conspiracy to commit health care fraud.  Dkt. 206.  In her plea agreement, defendant admitted to a robust factual basis, which detailed how defendant knew she was engaged in a fraud scheme at the Clinics, and was submitting a massive volume of claims to insurance companies for medical services defendant knew were not medically necessary, or were not actually provided to patients.  PA ¶ 11.

Yet, despite admitting this, defendant's sentencing memorandum contains numerous statements that minimize defendant's knowledge of the fraud at the Clinics.  Defendant's sentencing memorandum says defendant continued to participate in the offense even after she became "suspicious" that what was going on at the Clinics was "at best inappropriate and at worst illegal."  Def. Mem., at 9:22-24.  In addition, quoting from her retained psychologist, defendant's sentencing memorandum claims that defendant was an unwitting insurance biller who "simply received the superbills from the physicians or assistants, that contained the procedure codes and diagnosis" and that defendant "had no means of knowing whether a particular patient had, in fact, ever been seen in the office, if they had ever been treated for anything, whether or not the diagnosis had any clinical basis and was, therefore, justified, and what

1 | specific procedure was, indeed, actually performed." Id. at 10:19-
2 | 11:2.

3 | These statements contradict the facts in the factual basis of
4 | defendant's plea agreement, which defendant admitted to under oath
5 | during her change of plea hearing.  Defendant admitted that she
6 | "submitted false and fraudulent claims to the Health Insurance
7 | Companies for medical procedures that defendant knew were either not
8 | actually provided to the patients, or were not medically necessary."
9 | PA, at 9:22-25 (emphasis added).  Defendant was not merely
10 | "suspicious" that there was fraud occurring at the Clinics –
11 | defendant knew that she was submitting fraudulent claims to the
12 | insurance companies for services that were not provided to patients
13 | and/or were not medically necessary.  Id.  Defendant further admitted
14 | that she acted willfully and with intent to defraud the insurance
15 | companies.  Id. at 10:12-13.  Indeed, defendant submitted more than
16 | $20 million in fraudulent claims to insurance companies over a period
17 | of more than five years.  Id. at 10:6-11.

18 | Defendant's attempt to back away from the factual basis of her
19 | plea agreement indicates that defendant still does not recognize the
20 | seriousness of her criminal conduct.  Accordingly, a 30-month prison
21 | term is appropriate for defendant to punish her for her serious
22 | criminal conduct and to promote respect for the law.

23 | **II.  DEFENDANT'S FAMILY CIRCUMSTANCES DO NOT MERIT A REDUCED SENTENCE**

24 | Defendant argues that she should be sentenced to a term of
25 | imprisonment because she has four children, ages 7 to 12.  Def. Mem.,
26 | at 1.  However, as the government pointed out in its sentencing
27 | memorandum, defendant has family in Los Angeles who can take care of
28 | her children while defendant serves out her prison term.  Indeed,

defendant's husband – and the father of all four children – is available to care for the children while defendant is in prison. Defendant suggests that her husband is not able to care for the children, but although defendant's husband may have some difficulty standing for long periods of time, the PSR indicates that he "works as a caregiver and handyman."  PSR ¶ 63.

Furthermore, even if defendant's husband is not able to care for his own children for some reason, defendant appears to have significant extended family support.  Defendant's sister, Agavni Ilangezyan, is a bank manager who lives with defendant's mother in Glendale.  PSR ¶ 59.  Defendant has also submitted numerous letters of support from other family members.  Def. Mem., Ex. C.  Thus, this is clearly not a case where there are no available caretakers for defendant's children – there are several family members, including the children's own father, who could care for the children while defendant serves her 30-month prison term.

## III. DEFENDANT'S GUIDELINES SHOULD BE CALCULATED USING THE INTENDED LOSS AMOUNT OF $20 MILLION

Finally, the Court should reject defendant's argument that the Court should use the actual loss amount of $8 million, instead of the intended loss of $20 million.  Def. Mem., at 3.

Ninth Circuit case law is clear that in a health care fraud case like this one, the total amount of fraudulent claims billed to the insurance companies is the presumed amount of loss under the Guidelines.  United States v. Popov, 742 F.3d 911, 915 (9th Cir. 2014).  In this case, defendant admitted in the plea agreement that the billed amount is $20,932,411.  PA, at 10:8.  As a result, the PSR indicates that the appropriate loss amount for defendant is +20.  PSR

¶ 38.   Defendant's arguments for a loss enhancement based on the lower actual loss amount of $8 million is not supported by law or fact, and the argument should be rejected.

**IV.   CONCLUSION**

The government respectfully submits that a sentence of 30 months is appropriate for defendant in light of the massive scale of the fraud in this case, which involved $20 million in false claims being submitted to insurance companies and the insurance companies paying approximately $8 million on those false claims.  Defendant was a central player in this significant health care fraud conspiracy – she personally submitted a massive volume of the false claims to the insurance companies.  Defendant knew that she was submitting fraudulent claims to the insurance companies and she did so for more than five years.  Accordingly, defendant should be sentenced to 30 months in prison in order to appropriately punish defendant for her conduct and to provide appropriate deterrence to others.  The Court should also impose a three-year period of supervised release; order restitution in the total amount of $7,991,406, as described in the government's sentencing memorandum; and order defendant to pay a mandatory special assessment of $100.

4